Date signed August 31, 2015



DAVID E. RICE
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| THOMAS TODD COLLINS, | * | Case No. 14-15351-DER |
| Debtor. | * | (Chapter 7) |
| DONNA GIORDANO, | * | |
| Plaintiff, | * | |
| vs. | * | Adversary Pro. No. 14-00733-DER |
| THOMAS TODD COLLINS, | * | |
| Defendant. | * | |

### MEMORANDUM OPINION

Donna Giordano holds a claim against Thomas Todd Collins ("Todd Collins") based upon a judgment for more than $2,100,000 that she obtained in the Circuit Court for Anne Arundel County, Maryland (the "Circuit Court"). After Todd Collins filed a Chapter 7 bankruptcy petition in this court, Donna Giordano filed a complaint seeking a determination as to the dischargeability of that particular claim against Todd Collins under § 523(a)(2)(A) of title 11 of the United States Code (the "Bankruptcy Code").

A trial on the merits of the complaint was conducted on June 18, 2015. At trial, Donna Giordano, Todd Collins, and a number of other witnesses testified, and the parties offered numerous documents that were admitted into evidence. For the reasons stated in this opinion, the claim held by Donna Giordano against Todd Collins is a debt that is not excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code and thus her claim is subject to, and has been discharged by, the discharge this court granted to Todd Collins in his Chapter 7 case on February 20, 2015.

## JURISDICTION

This court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Rule 402 of the Local Rules of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).

## FINDINGS OF FACT

After consideration of all the testimony and review of all the exhibits admitted into evidence, I make the following findings of fact based upon the preponderance of the evidence.

This controversy stems from loans made by Donna Giordano to Certified Cars, Inc. ("Certified"), a used car dealership located in Glen Bernie, Maryland that was owned by Jason G. Giordano and Todd Collins. Jason Giordano is Donna Giordano's son and was the owner of a 75% equity interest in, and the President of, Certified. Todd Collins was the owner of a 25% equity interest in Certified. At the time Certified was organized in July of 2010, Donna Giordano gave Jason Giordano the $180,000 he used to make his initial equity contribution to

Certified.  Todd Collins made a separate equity contribution of $100,000 from his own funds.  The floorplan financing in the amount of $1,250,000 for Certified's inventory of used cars was provided by Branch Banking and Trust Company ("BB&T") around October of 2010.  Because the floorplan financing would not otherwise have been made available to Certified without her guarantee, Donna Giordano was a co-obligor on the floorplan debt to BB&T.

Although at the time of the events in question she had no experience in the operation of automobile dealerships and no experience as a lender, Donna Giordano was not an unsophisticated business person.  She worked for many years in a variety of jobs as a legal secretary as well as an administrative assistant.  When her husband became a quadriplegic due to a car accident in 1996, she assisted him in the operation of his many business interests including construction of office buildings.  After his death in 2001, she took over and successfully completed several of her husband's real estate development projects.  She continues to be actively involved in the operation of several businesses she inherited from her husband.

## The First Promissory Note

Donna Giordano lives in Vail, Colorado.  She regularly received and reviewed reports on the status of Certified's business operations.  In addition, she made occasional trips to the Baltimore area where Jason Giordano lived with his then wife Nicole T. Giordano and their children.  At the conclusion of one such trip to Baltimore in May of 2011, Jason Giordano asked Donna Giordano to stop by the dealership on the way to the airport to discuss the business.  At that meeting, Jason Giordano and Todd Collins advised her that the business was in financial difficulty and that a loan of $600,000 was needed to resolve issues with operating expenses.  Donna Giordano agreed to make the $600,000 loan and after her return to Colorado wired $600,000 to Certified.  She consulted with an attorney in Colorado who prepared a promissory

note and guaranties to document the loan, which were faxed to Certified for execution. After she wired the $600,000 to Certified, Donna Giordano received the executed loan documents by mail.

As a result of these events, Certified executed the Promissory Note in the original principal amount of $600,000 dated June 20, 2011 made payable to Donna Giordano [Plaintiff's Exhibit 1] (the "First Promissory Note"). Jason Giordano and Todd Collins each executed a separate Guarantee dated June 20, 2011 in which they guaranteed payment when due of the indebtedness of Certified under the First Promissory Note [Plaintiff's Exhibits 2 and 3]. Jason Giordano executed the First Promissory Note on behalf of Certified as its President. At the end of the First Promissory Note, four additional signatures of Jason Giordano, Nicole Giordano, Todd Collins, and Christine Collins (then the wife of Todd Collins)[1] appear under a heading that reads, "The undersigned executed with respect to the covenants and obligations under the section title 'Additional Covenants' above." [Plaintiff's Exhibit 1, at p. 4]. Donna Giordano views this language as tantamount to a personal guarantee of the First Promissory Note by Christine Collins and the other individual signatories.

Donna Giordano argued at trial that the signature of Christine Collins on the First Promissory Note was an unauthorized forgery by Todd Collins. Christine Collins testified at trial that the signature on the First Promissory Note was not her signature and that she had not authorized Todd Collins to sign the First Promissory Note on her behalf. She acknowledged in her testimony, however, that had the document been presented to her at the time she would likely have signed it if Todd Collins asked her to do so. Todd Collins testified that Christine Collins

---

[1] When called to testify at trial, the former Mrs. Collins identified herself under oath as "Christina Rose Collins." In his testimony, Todd Collins pointed out that her name was actually "Christina," not "Christine." For ease of reference, I refer to the former wife of Todd Collins in this opinion as "Christine Collins," the name by which she was identified in the various pleadings filed by the parties.

signed the First Promissory Note.  According to his testimony, he took the loan documents home with him after they were received at Certified and discussed them with Christine Collins while sitting with her at their kitchen table, at which time he stated she signed the First Promissory Note.  Based upon my opportunity to observe the credibility and demeanor of the witnesses, I find the testimony of Todd Collins about these events to be more credible than that of Christine Collins.  Thus, I find that the signature of Christine Collins on the First Promissory Note is genuine and that it was placed there by Christine Collins.

## The Second Promissory Note

Certified made payments on the First Promissory Note in July and August of 2011 totaling only $10,985.42.[2]  Sometime in late August of 2011, Jason Giordano and Todd Collins spoke by telephone with Donna Giordano, who was then in Colorado.  On that call, they advised her that they had "misfigured" the amount needed to resolve the financial difficulties at Certified and requested that she loan an additional $320,000 to the business.  Donna Giordano agreed to make the loan and made prompt arrangements to raise the needed money, which was wire transferred in two installments to Certified in September of 2011.  To save legal fees, Donna Giordano typed a promissory note for this loan based upon the one prepared by her lawyer for the earlier loan, which she then faxed to Certified for execution.  After she wired the $320,000 to Certified, Donna Giordano received the executed promissory note by mail.

As a result of this second series of events, Certified executed the Promissory Note in the original principal amount of $320,000 dated September 2, 2011 made payable to Donna

---

[2] Monthly payments under the First Promissory Note were due in the amount of $10,000 on the first day of each month beginning July 1, 2011.  According to Donna Giordano's testimony, Jason Giordano and Todd Collins initially offered to make payments of $20,000 per month, but she believed that Certified was not able to pay that much.

Giordano [Plaintiff's Exhibit 4] (the "Second Promissory Note").[3] Jason Giordano executed the Second Promissory Note on behalf of Certified as its President. Unlike the First Promissory Note, Jason Giordano and Todd Collins did not execute a separate Guarantee of Certified's indebtedness under the Second Promissory Note. Like the First Promissory Note, however, the Second Promissory Note again called for the individual signature of Jason Giordano, Nicole Giordano, Todd Collins, and Christine Collins under the same heading referring to the "Additional Covenants" section of the note [Plaintiff's Exhibit 4, at p. 4], which Donna Giordano views as tantamount to a personal guarantee of the Second Promissory Note by Christine Collins and the other individual signatories.

In her complaint and at trial, Donna Giordano contended that the signature of Christine Collins on the Second Promissory Note was also an unauthorized forgery by Todd Collins. Similar to her testimony regarding the First Promissory Note, Christine Collins testified that the signature on the Second Promissory Note was not her signature, that she had not authorized Todd Collins to sign the Second Promissory Note on her behalf, and that had the document been presented to her at the time she would likely have signed it if Todd Collins asked her to do so. Todd Collins testified that when the Second Promissory Note arrived by fax at Certified, Jason Giordano was anxious to return it to his mother as soon as possible and pressured Todd Collins to sign it immediately. According to his testimony, Todd Collins believed that although he had not spoken to Christine Collins in advance, he was authorized to sign the Second Promissory Note on her behalf as her spouse and admits that he did so. He testified that later on the same

---

[3] Monthly payments under the Second Promissory Note were due in the amount of $2,000 on the first day of each month beginning October 1, 2011. According to Donna Giordano's testimony, she did not ask for a higher payment because she believed that Certified was not able to pay more.

day on which he signed the Second Promissory Note on her behalf, he called Christine Collins to advise her he had done so and obtained her approval for his action.

Based upon my opportunity to observe the credibility and demeanor of the witnesses, I find the testimony of Todd Collins about these events to be more credible than that of Christine Collins. Thus, I find that the Todd Collins placed the signature of Christine Collins on the Second Promissory Note and that he shortly thereafter obtained her approval for doing so.

### The Third Promissory Note

After execution of the Second Promissory Note, the business of Certified continued to experience financial difficulty and no payments were made to Donna Giordano on either the First Promissory Note or the Second Promissory Note. Eventually, BB&T contacted Donna Giordano and advised her that it was terminating the floorplan financing. Because she was liable to BB&T on the floorplan financing, Donna Giordano obtained funds sufficient to pay the $1,250,000 liability of Certified to BB&T and take over the floorplan financing for Certified. As a result, Certified executed the Promissory Note in the original principal amount of $1,250,000 dated March 16, 2012 made payable to Donna Giordano [Plaintiff's Exhibit 5] (the "Third Promissory Note"). Jason Giordano and Todd Collins each executed a separate Guarantee dated March 16, 2012 in which they guaranteed payment when due of the indebtedness of Certified under the Third Promissory Note [Plaintiff's Exhibits 6 and 7]. Like the two earlier notes, the Third Promissory Note was executed by Jason Giordano on behalf of Certified as its President. Unlike the First Promissory Note and the Second Promissory Note, however, the Third Promissory Note called for the individual signature of only Jason Giordano and Todd Collins under the heading referring to the "Additional Covenants" section of the note [Plaintiff's Exhibit 5, at p. 4]. After

Donna Giordano took over the floorplan financing, she concluded that Certified's business was not viable and that it had to be closed.

## The Circuit Court Judgment

Thereafter, Donna Giordano filed a complaint against Certified, Todd Collins, Christine Collins, Jason Giordano, and Nicole Giordano docketed in the Circuit Court as Giordano v. Certified Cars, Inc., et al., Case No. 02-C-13-180085, in which she asserted that each of them was jointly and severally liable to her for the entire remaining indebtedness of $2,159,014.58 owed by Certified under the First Promissory Note, the Second Promissory Note, and the Third Promissory Note. Neither Christine Collins nor any of the other defendants answered or otherwise responded to Donna Giordano's complaint. Christine Collins testified that upon being served the complaint she sent the papers to her attorney who advised her not to respond to the complaint. On November 12, 2013, the Circuit Court entered a judgment in favor of Donna Giordano against Certified, Todd Collins, Christine Collins, Jason Giordano, and Nicole Giordano, jointly and severally, in the sum of $2,159,014.58, plus attorney's fees in the amount of $25,000.00, costs of the case, and post-judgment interest at the legal rate (the "Judgment"). The Judgment is final and non-appealable. To date, Donna Giordano has not moved to vacate or otherwise disturb the Judgment in any regard.

## Events in This Court

Todd Collins filed his Chapter 7 bankruptcy petition in this court on April 4, 2014. Information came to light after the bankruptcy case was filed that lead Donna Giordano to believe that Todd Collins had forged the signature of Christine Collins on the Second Promissory Note. Thereafter, Donna Giordano commenced this adversary proceeding seeking a determination under § 523(a)(2)(A) of the Bankruptcy Code that the entire liability of Todd

Collins on the Judgment is nondischargeable as a liability for money or extension of credit obtained by false pretenses, false representations, or actual fraud.  Because no timely objection to his discharge was filed, this court granted Todd Collins a discharge in his Chapter 7 case pursuant to § 727 of the Bankruptcy Code on February 20, 2015.  At the beginning of the trial in this adversary proceeding, Donna Giordano abandoned her contention that the liability of Todd Collins on the Third Promissory Note is nondischargeable.

## CONCLUSIONS OF LAW

The exceptions to discharge specified by Congress in § 523 of the Bankruptcy Code are to be construed narrowly.  As the Fourth Circuit has repeatedly made clear, "[w]hen considering the applicability of an exception to discharge, [a court must] construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'"  Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 219 (4th Cir. 2007) (quoting Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 130 (4th Cir. 1999)).  The Supreme Court has long cautioned against broad constructions of exceptions to discharge because they "would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'"  Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (quoting Gleason v. Thaw, 236 U.S. 558, 562 (1915)).  See also, Bullock v. BankChampaign, 569 U.S. ___, ___, 133 S.Ct. 1754, 1760 (2013).

Conversely, this court must be "equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code."  Biondo, 180 F.3d at 130.  As the Supreme Court has indicated, while the Bankruptcy Code provides a debtor with "'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,'" the Bankruptcy Code also "limits that opportunity to the

'honest but unfortunate debtor.'" Brown v. Felsen, 442 U.S. 127, 128 (1979) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)).

The burden of proof is on the creditor to establish by a preponderance of the evidence that a debt is not dischargeable. Kubota Tractor Corp. v. Strack (In re Strack), 524 F.3d 493, 497 (4th Cir. 1991) (citing Grogan v. Garner, 498 U.S. 279, 291 (1991)); Colombo Bank v. Sharp, 477 B.R. 613, 619 (D. Md. 2008). Although the allowance of a claim is generally governed by state law, "the issue of non-dischargeability is a matter of federal law governed by the Bankruptcy Code." Reinheimer v. Ortman (In re Reinheimer), 509 B.R. 12, 18 (Bankr. D. Md. 2014).

When a creditor has reduced a claim to judgment in a state court prior to bankruptcy, the bankruptcy court generally "must give the same preclusive effect to [the] state court judgment as the forum that rendered the judgment would have given it." Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008) (citing Allen v. McCurry, 449 U.S. 90, 96 (1980)); Phillip v. Reecher (In re Reecher), 514 B.R. 136, 140 (Bankr. D. Md. 2014). If (as is the case here) the basis for the nondischargeability of a claim cannot be determined from the record of the state court proceedings, the creditor is entitled to present extrinsic evidence in the bankruptcy court to support a determination that the claim is not dischargeable. Brown v. Felson, 442 U.S. at 138-39; see also, Nunnery, 478 F.3d at 220 ("[The Supreme Court] has ruled that a bankruptcy court may look behind the record of the underlying judgment to determine if the debtor indeed obtained the debt through fraudulent means."); Kovens v. Goodwich (In re Goodwich), 517 B.R. 572, 583 (Bankr. D. Md. 2014); Gulati v. McClendon (In re McClendon), 415 B.R. 170, 182 (Bankr. D. Md. 2009) ("Collateral estoppel is not appropriate when a finding of nondischargeability requires proof of an element not litigated in an earlier proceeding.").

Mindful of these general principles, I turn to consideration of whether the liability of Todd Collins on the Judgment is nondischargeable under the provisions § 523(a)(2)(A) of the Bankruptcy Code as asserted by Donna Giordano.

### The Five Elements

Under § 523(a)(2)(A), a discharge granted to an individual Chapter 7 debtor does not discharge, among other things, a debt for money or an extension of credit to the extent obtained by false pretenses, a false representation, or actual fraud.  As the Fourth Circuit has explained, a creditor asserting a claim under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence – namely, "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages."  Nunnery, 478 F.3d at 218.

Donna Giordano has not met her burden under § 523(a)(2)(A) for at least three reasons (any one of which would be fatal to her case).  First and most importantly, Todd Collins simply did not make a false representation.  Todd Collins also did not have any intent to deceive Donna Giordano.  Lastly, Donna Giordano sustained no damage as a result of the alleged false representations by Todd Collins.

At trial, Donna Giordano argued that she relied on the signature of Christine Collins and what she assumed was the agreement of Christine Collins to guarantee the loans made to Certified.  As discussed above, there simply was no misrepresentation and this court finds that Todd Collins did not fraudulently forge the signature of Christine Collins on either the First Promissory Note or the Second Promissory Note.  Although Todd Collins admits that he signed the signature of Christine Collins on the Second Promissory Note, he did so under the belief that

he was permitted to do so as her spouse; in any event, he received her authorization to do so after the fact.

As demonstrated by the testimony of Todd Collins and Christine Collins, there was no intent to deceive on the part of Todd Collins by his signing of the Second Promissory Note on behalf of Christine Collins.  Todd Collins believed he was authorized to sign for Christine Collins as her spouse, and later that same day obtained her approval for his action.  Christine Collins admitted at trial that had Todd Collins asked her to sign the Second Promissory Note she likely would have done so. Moreover, Christine Collins neither responded to the complaint in Circuit Court nor moved to vacate the Judgment.  Thus, she effectively acknowledged the validity of her signature and her liability as a guarantor of the First and Second Promissory Notes by not contesting entry of the Judgment against her.

Finally, any alleged misrepresentation about the signature of Christine Collins on the First or Second Promissory Notes did not cause Donna Giordano any damage.  Donna Giordano obtained and still holds the Judgment against Christine Collins for the full amount of the debt Donna Giordano is owed by Certified on all three of its promissory notes – which is final and non-appealable.  Furthermore, it may well be that Donna Giordano now has a judgment for more than was provided for in her loan documents.  It was perhaps a doubtful proposition that any signature of Christine Collins amounted to a guarantee of the entire indebtedness of Certified under the First, Second and Third Promissory Notes.  Regardless, Christine Collins did not dispute that she was so obligated.  As a result, Donna Giordano has today all the rights she asserts were part of her original bargain with Christine Collins.  That being the case, she has no cause to say she was damaged by any alleged misrepresentation by Todd Collins.

**CONCLUSION**

For the above reasons, the claim asserted by Donna Giordano against Todd Collins is not excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code. Thus, it is a dischargeable debt that has been discharged by the Order Granting Discharge to Debtor entered in the main Chapter 7 bankruptcy case filed by Todd Collins on February 20, 2015. An order will be entered consistent with this Memorandum Opinion.

cc: Joyce A. Kuhns, Esq.
Robin Leone, Esq.
Saul Ewing, LLP
500 East Pratt Street, Suite 800
Baltimore, Maryland 21202
*Attorneys for the Plaintiff*

Joseph Selba, Esq.
Law Office of Lori Simpson, LLC
1400 South Charles Street
Baltimore, Maryland 21230
*Attorney for Defendant*

Charles R. Goldstein, Chapter 7 Trustee
Gerard R. Vetter, Assistant U.S. Trustee

**-- End of Memorandum Opinion --**